UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:                                            Chapter 11
    I.C.X.C.N., INC.,                               Case No. 11-62026
                                                                      Hon.
    Debtor.
_____/

## FIRST DAY MOTION OF DEBTOR FOR ORDER
## AUTHORIZING INTERIM AND PERMANENT USE OF
## CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

I.C.X.C.N., Inc. ("ICXCN"), by and through its undersigned proposed counsel, respectfully moves (the "Motion") the Court pursuant to sections 105(a), 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001, for entry of an order authorizing Cardinal to utilize cash collateral on an emergency interim basis and, thereafter, on a permanent basis and granting adequate protection. In support of this Motion, Debtor relies upon the *Affidavit of Constantine Drosis in Support of Chapter 11 Petition and First-Day Motions* (the "Drosis Affidavit"), filed concurrently herewith, and respectfully states as follows:

### INTRODUCTION

1. Through this Motion, the Debtor respectfully requests that the Court schedule a hearing on the earliest available date to authorize the Debtor's use of Cash Collateral on an interim basis, pending a final hearing on the Motion, in order to avoid immediate and irreparable harm to the estate.

### JURISDICTION

2. This court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. This matter is a core proceeding, as defined in 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§1408 and 1409.

3. The bases for the relief requested herein are 11 U.S.C. §§ 105, 361, 362, 363 and 364, Fed. R. Bankr. P. 2002, 4001(b) and 9014 and E.D. Mich. L.B.R. 4001-2(a).

### BACKGROUND

4. On August 15, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). Pursuant to §§1107(a) and 1108 of the Code, the Debtor is currently operating its businesses and managing its affairs as a Debtor in Possession. Joy Drosis is the responsible person for the Debtor in Possession.

5. As of the date hereof, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 case.

6. The Debtor is a family-style restaurant operating under the name "Nello's Eatery." (See Exhibit B, Drosis Affidavit).

7. A significant portion of the value of the Debtor's business arises from its ongoing operations, and its ability to continue ordering foods and beverages from its vendors. (See Exhibit B, Drosis Affidavit).

8. Without the ability to meet its customers' requirements, the Debtor's customers would likely seek alternative sources for dining.

9. As of the Petition Date, the Debtor's principal assets consisted of the following:
   a. Food and beverage inventory valued at approximately $5,000
   b. Furniture and fixtures valued at approximately $12,000
   c. Restaurant equipment valued at approximately $20,000
   d. Leasehold improvements valued at approximately $25,000
   e. Television security system valued at approximately $2,000
   f. Petty cash valued at approximately $1,000
   g. Bank accounts valued at approximately $1,500
   h. Trade name and good will valued at approximately $10,000

## NATURE OF DEBT

10. Prior to the Petition Date, the Debtor owed the Internal Revenue Service ("IRS") federal payroll taxes of approximately $76,500. The debt obligation to the IRS is secured by liens upon all of the Debtor's property ("IRS Collateral"), as described in the tax liens on file with the Michigan Department of State and other related documents executed by the IRS (the "IRS Documents"). The IRS will, upon information and belief, assert that it has a first priority security interest in all of the Debtor's Cash Collateral.

11. Prior to the Petition Date, the Debtor owed the Michigan Department of Treasury ("Michigan Treasury") sales taxes and withholding taxes of approximately 45,837.36. The debt obligation to the Michigan Treasury is secured by liens upon all of the Debtor's property ("Michigan Treasury Collateral"), as described in the tax liens on file with the Michigan Department of State and other related documents executed by the Michigan Treasury (the "Michigan Treasury Documents"). The Michigan Treasury will, upon information and belief, assert that it has a second priority security interest in all of the Debtor's Cash Collateral. (The IRS and Michigan Treasury are hereinafter collectively referred to as the "Secured Parties").

12. Upon information and belief, no other creditors have or will assert an interest in Debtor's Cash Collateral.[1]

13. Nothing in the Motion may be construed as an admission with respect to liability for any indebtedness, nor should anything within the Motion be construed as an admission with respect to the extent, status, validity and/or enforceability of any lien against any of the Debtor's assets.

### REQUEST FOR USE OF CASH COLLATERAL

14. The Debtor is confident that it will be profitable post-petition and that it will remain profitable during this bankruptcy proceeding. (See Exhibit B, Drosis Affidavit).

15. The Debtor will thereby be able to provide its secured creditors with adequate protection through its continuing operations and through the replacement liens. *See, e.g., Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713, 717-18 (Bankr. D. Del. 1996) (holding that credible projections of post-petition operating profits provided the secured creditor with adequate protection).

### ADEQUATE PROTECTION AND DISTRIBUTIONS

16. The Debtor will only use the Cash Collateral to pay wages, salaries, other immediate fees and expenses as may be necessary to continue Debtor's operations, and to comply with all Chapter 11 requirements, including statutory fees payable to the United States Trustee.

17. The Debtor's proposed use of Cash Collateral will provide adequate protection to the secured creditors by increasing the value of the business for the benefit of the secured creditors.

18. Additionally, as adequate protection for the secured interests that the Michigan Treasury and/or IRS may claim in the Cash Collateral of the Debtor, and to the extent that the Debtor uses such Cash Collateral and does not replace same, the Debtor offers replacement liens in all types and descriptions of collateral which may have secured the tax obligations or other secured pre-petition liabilities (or any other prepetition documents involving other creditors with an interest in Cash Collateral), which are created or arise after the Petition Date.[2]

19. On the basis of the adequate protection described above, the Debtor submits that it should be granted authority to use Cash Collateral in accordance with its proposed consolidated budget (with

---

[1] To the extent that this Court determines that any other creditor has an interest in Cash Collateral, the Debtor will offer that creditor substantially the same treatment offered in this Motion. The priority of replacement liens provided to such creditor, if any, shall remain consistent with the priority of the lien held by that creditor prior to the Petition Date.

[2] To the extent that this Court determines that any other creditor has an interest in Cash Collateral, the Debtor will offer that creditor substantially the same treatment offered in this Motion. The priority of replacement liens provided to such creditor, if any, shall remain consistent with the priority of the lien held by that creditor prior to the Petition Date.

allowance for overage on each expense item not to exceed 10% in the aggregate), a copy of which is attached hereto as Exhibit C (the "Budget"), for a five (5) week period (the "Period"), and thereafter upon further order of this Court, following a final hearing on this Motion, on a permanent basis, in accordance with its operating needs. The Budget projects that the Debtor's operations will be cash neutral-to-positive for the Period.

20. As part of its request to use Cash Collateral, the Debtor is requesting that this Court allow it to escrow, on a monthly basis, $1,500 into the client trust account of its proposed counsel to pay the professional fees of legal counsel employed by the Debtor in connection with the Bankruptcy proceeding to the extent the fees are allowed by this Court (the "Professional Fees").[3]

21. The Debtor submits that the Professional Fees will remain in the property of the estate, until such time that the fees for such professionals are allowed and the Professional Fees are disbursed. The purpose of this escrow account is to establish a monthly payment plan such that if, and when, for the Debtor's professionals are allowed, the Debtor will have already set aside out of the Debtor's Cash Collateral sums that may be used to pay these administrative obligations.

## CONCLUSION

22. The Debtor contends that without using the Cash Collateral, it will suffer immediate and irreparable harm that would be detrimental to the interests of the estate and to all the creditors. Without the use of Cash Collateral, the Debtor could not continue the operation of its business in an orderly manner, including the payment of utilities, insurance premiums, could not continue to order, sell and timely deliver its inventory to its customers, and could not meet its administrative expense obligations incurred during this Chapter 11 case. An inability to use these funds during the Chapter 11 case could cripple the Debtor's business operations.

23. The entry of an order authorizing Debtor's use of cash collateral and granting adequate protection will minimize disruption of the Debtor's business and will maximize the value of the Debtor's assets for the benefit of all creditors, and is, therefore, in the best interests of the estate and its creditors.

## NOTICE

24. Notice of this First Day Motion will be given to (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) identified secured creditors; and (c) the Debtor's twenty (20) largest unsecured creditors in this bankruptcy case, via overnight mail, electronic mail, and/or facsimile transmission. In light of the nature of the relief requested, the Debtor submits that no further

---

[3] The Debtor has or will shortly will file an Application to Employ The Xenos Law Firm, PLC as Counsel for Debtor.

notice is required. Because of the nature of the relief requested, the Debtor respectfully submits that no further notice of the relief requested in this Motion need to be given.

25. No previous motion for the requested relief has been made to this or any other court.

WHEREFORE, the Debtor, I.C.X.C.N., Inc. respectfully requests this Honorable Court enter the proposed Order attached as Exhibit A (i) authorizing Debtor's use of Cash Collateral on an emergency interim basis and, following a final hearing on this Motion, (ii) authorizing the Debtor to utilize Cash Collateral on a permanent basis without further order of Court, and (iii) granting the Debtor such other and further relief as is just and equitable.

Dated: August 16, 2011

THE XENOS LAW FIRM, PLC

By: */s/ Elias T. Xenos*
Elias T. Xenos (P60729)
261 E. Maple Road
Birmingham, MI 48009
Email: etx@XenosLawFirm.com
(248) 812-9495 (p)
(248) 498-6272 (f)

*Application to Represent Debtor Pending*

STATE OF MICHIGAN    )
                     ) SS.
COUNTY OF OAKLAND    )

We, Constantine Drosis and Joy Drosis, hereby jointly attest, swear and declare under oath that the information set forth and provided in this Motion is true and accurate to the best of our knowledge. We have assisted in the preparation of this Motion, and have provided the factual recitations and granted final approval to the filing of this Motion.

| */s/ Joy Drosis* | /s/ *Constantine Drosis* |
| --- | --- |
| Joy Drosis | Constantine Drosis |
| President | Manager |
| I.C.X.C.N., Inc. | I.C.X.C.N., Inc. |

Subscribed and sworn to before me this 16th day of August, 2011.
/s/ *Elias T. Xenos*
Notary Public
Oakland County, Michigan
My commission expires: April 28, 2012